# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TIMOTHY M. SNIDER, JR., et al.,**
      **Plaintiffs,**

     v.                                                                                Case No. 22-C-25

**TODD SKARBAN, et al.,**
      **Defendants.**

---

## SCREENING ORDER

Plaintiffs Timothy M. Snider, Jr., Carl Self, and Dylan Anthony Hrabik, all of whom are inmates at different state or county correctional facilities, filed a joint pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated their civil rights. Plaintiffs Self and Hrabik filed motions for leave to proceed without prepaying the filing fee, but Snider did not and has not complied with the court's orders. This order dismisses Snider, resolves Self and Hrabik's motions, and screens the complaint.

### I. MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiffs were prisoners when they filed the complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 7, 2022, I ordered Self to pay an initial partial filing fee of $6.61 and ordered Hrabik to pay an initial partial filing fee of $32.81. ECF No. 12. Those plaintiffs paid their fees on February 15, 2022. I will grant Self and Hrabik's motions for leave to

proceed without prepaying the filing fee. They must pay the remainder of the filing fee over time in the manner explained at the end of this order.

As noted, Snider did not file a motion for leave to proceed without prepaying the filing fee or pay the filing fee, despite my order to do so. ECF No. 11. I warned Snider that if he did not pay the fee, file the requisite documents, or explain why he could not do either by February 28, 2022, I would dismiss him from this case for his failure to prosecute. *Id.* That deadline has passed, and Snider has not filed the required documents, paid the filing fee, or explained why he is unable to comply. Accordingly, plaintiff Timothy M. Snider, Jr., is **DISMISSED** from this lawsuit. The case shall proceed with Carl Self as the lead plaintiff.

## II. SCREENING THE COMPLAINT

### A. Federal Screening Standard

Under the PLRA, I must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, I apply the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). I construe pro se complaints liberally and hold them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

**B. Plaintiffs' Allegations**

The complaint relates to events that allegedly occurred between January 2019 and March 2020, while the plaintiffs were pretrial detainees at the Oconto County Jail. The complaint names as defendants Oconto County Sheriff Todd Skarban, Jail Administrator Carol Kopp, correctional officers Craig Huberty and Justin Gandt, and a John Doe State Inspector.

The complaint concerns inmate showers and bathrooms at the Jail, which allegedly do not provide adequate privacy. The complaint alleges that the doors covering the showers do not prevent guards or other inmates from viewing the occupant while he or

she is using the shower and often nude. The complaint alleges that female guards often view nude male inmates, even though prison policy prohibits female guards from patrolling where they can view male inmates using the showers. The complaint alleges that female guards often whistle or shout at naked male inmates as they walk by inmate pods. The complaint alleges that there are cameras in pods that view inmates using showers or toilets. Female inmates also can see into male inmates' showers or toilets as they walk past male inmate pods to the library or recreation room.[1]

The plaintiffs allege that female guards and inmates frequently saw them naked or while using the showers or toilet in their housing pods. Self says he often put up a blanket to cover his cell door for privacy. He asserts that the blanket covered only two of cell's four windows, so "it would not be any security risk." ECF No. 1, ¶ 18. Nonetheless, defendant Gandt would pull down the blanket from Self's door as Self was using the toilet, which he says humiliated and degraded him. Gandt similarly removed blankets that Hrabik hung up for privacy. Self alleges that sometime in January 2020, he showed Gandt case law suggesting Gandt's acts were unconstitutional. Gandt allegedly responded, "[I]f you don't like it, don't come to jail." *Id.*, ¶ 20. The plaintiffs allege that Defendant Huberty similarly yelled at the plaintiffs for hanging blankets in their cells and threatened them with lockdown or discipline if they did not comply. They assert that the officers' actions caused them "a lot of emotional distress." *Id.*, ¶ 21. The defendants allegedly told the plaintiffs that putting up a blanket creates a security concern, but the plaintiffs insist this is not so

---

[1] Self previously filed a complaint about the privacy issues at the Jail. *See* Case No. 20-C-418. That complaint also alleged issues with the Jail's plumbing. I ordered Self to decide which of those separate issues he wanted to pursue. *Id.*, ECF No. 5. Self chose to proceed on the plumbing issue, and the parties eventually reached a settlement. *Id.*, ECF No. 37. This lawsuit pursues the privacy issue dropped from the previous lawsuit.

because the blanket does not cover the "two other very big windows in the cell where staff can easily view an inmate." *Id.*, ¶ 26.

The plaintiffs allege that corrections officers Niki and Alley (who are not defendants) told them Jail Administrator Kopp sent an email to Jail staff "stating there is no privacy, and that no inmate shall block any view of a window." *Id.*, ¶ 22. Self and Hrabik emailed Kopp complaining about this policy. They allege Kopp ignored their emails, so the plaintiffs filed grievances about the issue. The allege these grievances also were ignored, and Jail staff took no action to address their concerns.

The complaint alleges that male inmates in Pod 5, where the plaintiffs were housed, could easily see into female pods when female inmates were using their shower or toilet. The plaintiffs brought this issue to Kopp's attention, but she allegedly reiterated that the Jail had no privacy rights and refused to alter the policy. Plaintiff Hrabik was a juvenile inmate at the Jail, and he alleges that even the juvenile block had cameras in the inmates' showers. Hrabik also alleges that the segregation unit, where he was housed until February 1, 2020, had the same shower cameras.

The plaintiffs assert that Skarban and Kopp created and enforced the no-privacy policy, and the John Doe State Inspector approved it. The plaintiffs seek a permanent injunction ordering the Jail to cease its policy, judgment declaring that the Jail's policy violated their rights, and compensatory and punitive damages against each defendant.

## C. Analysis

The complaint challenges the Jail's policy of allowing male and female guards to view naked male and female inmates while they used the shower or toilet. Correctional officers "may, to maintain prison safety, watch the bathroom activity of opposite-sex

prisoners without violating" their rights. *Courtney v. Devore*, 595 F. App'x 618, 620 (7th Cir. 2014) (citing *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), *overruled on different grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020)). Courts also must afford "substantial deference" to the professional judgment of correctional staff who create and enforce institutional policies because they are in the best position to determine what security measures are necessary. *Bilka v. Farrey*, 447 F. App'x 742, 744 (7th Cir. 2011) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

But both pretrial detainees and convicted prisoners retain a limited privacy interest "in their bodies," which interest is protected under the Fourth Amendment. *Henry*, 969 F.3d at 779 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *see Bell v. Wolfish*, 441 U.S. 520 (1979). Therefore, correctional staff may violate detainees' or prisoners' rights if they enforce or abuse policies in ways intended "to humiliate the prisoners or detainees." *Courtney*, 595 F. App'x at 620.

The plaintiffs assert that officers at the Jail abused the policy and removed the blankets they affixed for privacy, citing a false security concern. The Jail's rule prohibiting inmates from covering their windows may be inherently reasonable, even if it leads to unintended consequences, *see Brown v. Polk Cty., Wisconsin*, 965 F.3d 534, 539 (7th Cir. 2020) (citing *Maryland v. King*, 569 U.S. 435, 448 (2013) (reiterating that "the 'touchstone' of the controlling Fourth Amendment inquiry remains reasonableness"), and the facts may later confirm that the Jail had "institutionally legitimate reasons" for the challenged privacy policy. *Courtney*, 595 F. App'x at 620. But for purposes of screening, I must accept as true the plaintiffs' allegations that the security rationale was a ruse

because the privacy blankets did not completely obscure correctional officers' view into their cells. I will therefore allow the plaintiffs to proceed on a Fourth Amendment claim.

The plaintiffs, however, may not proceed against every named defendant. The plaintiffs may proceed against officers Gandt and Huberty, who they allege personally removed the blankets to harass and embarrass, knowing the plaintiffs were hanging them for privacy. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (noting that named defendants must have "personally participated in or caused the unconstitutional actions"). But there is no *respondeat superior* liability under § 1983. *Iqbal*, 556 U.S. at 676. Although the plaintiffs generally allege that Sheriff Skarban "enforced and made" the policy about which they complain, ECF No. 1, ¶ 26, they do not allege that the Sheriff was aware of their concerns or of the officers' actions and facilitated, approved, or condoned them. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Even if the Sheriff knew about the plaintiffs' concerns and did not intervene, that still would not be enough to hold him liable under § 1983. *See Courtney*, 595 F. App'x at 620 (citing *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009)). I will dismiss Sheriff Skarban from this action.

The plaintiffs may proceed against Administrator Kopp, whom they allegedly emailed repeatedly to express their concerns. They allege Kopp responded by reiterating the Jail's policy and stating, "she would not be changing that policy." ECF No. 1, ¶ 25. The plaintiffs attached to the complaint grievances that Hrabik filed about the policy, to which Kopp responded. ECF No. 1-1 at 2–3. This shows that Kopp not only was aware of the policy but also had personal knowledge of the plaintiffs' complaints about the policy and refused to address them. That is sufficient at this stage of the proceedings to state a claim against her. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)

(explaining standard for showing defendant was personally involved in, or had personal knowledge of, constitutional violation).

The only allegation against the John Doe State Inspector is that he allowed the Jail "to carry out this privacy policy." ECF No. 1, ¶ 29. The plaintiffs do not allege that the Inspector was aware of the officers' allegedly harassing abuse of the policy, the plaintiffs' complaints about the policy, or the false security concern given to justify the policy. That the Inspector was passively aware of the policy does not render him personally liable to the plaintiffs. The plaintiffs may not proceed against him.

To the extent the plaintiffs seek to proceed on a claim about the ignored grievances, they do not state a claim. There is no inherent constitutional right to an inmate grievance system. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, Jail staff's failure to respond to the plaintiffs' grievances did not violate their constitutional rights. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

As a final note, the events detailed in the complaint ended in March 2020. The plaintiffs since have been transferred to state institutions. Neither plaintiff alleges that he expects to return to the Jail. The plaintiffs' requests for injunctive and declaratory relief are therefore moot. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); *Bigbee v. Nalley*, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing *Robinson v. City of Chicago*, 868 F.2d 959, 966 n.5 (7th Cir. 1989), and *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996)) (same for declaratory relief). The plaintiffs also may not seek

compensatory damages because they do not allege that they suffered any physical injury. *See Grayson v. Goetting*, 854 F. App'x 47, 49 (7th Cir. 2021) (citing 42 U.S.C. § 1997e(e)). The plaintiffs may proceed in this lawsuit for nominal and punitive damages only. *See id.* (citing *Uzuegbunam v. Preczewski*, --- U.S. ----, 141 S. Ct. 792, 801 (2021); and *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019)).

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiffs' motions for leave to proceed without prepaying the filing fee (ECF Nos. 5 & 7) are **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Timothy M. Snider, Jr., is **DISMISSED** from this lawsuit. The clerk shall terminate him from the docket.

**IT IS FURTHER ORDERED** that defendants Todd Skarban and John Doe State Inspector are **DISMISSED** from this lawsuit. The clerk shall terminate those defendants from the docket.

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon defendants Carol Kopp, Craig Huberty, and Justin Gandt at Oconto County Jail pursuant to Federal Rule of Civil Procedure 4. The plaintiffs are advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiffs information on how to remit payment. The court is not involved in collection of the fee.

**IT IS FURTHER ORDERED** that defendants Kopp, Huberty, and Gandt shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of plaintiff Carl Self shall collect from his prison trust account the $343.39 balance of the filing fee **by collecting payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to the account in any month in which either (1) the balance in the account exceeds $10 or (2) the income credited to the account in the preceding month exceeded $10.**

**IT IS FURTHER ORDERED** that the agency having custody of plaintiff Dylan Anthony Hrabik shall collect from his prison trust account the $317.19 balance of the filing fee **by collecting payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to the account in any month in which either (1) the balance in the account exceeds $10 or (2) the income credited to the account in the preceding month exceeded $10.**

The collected payments shall be sent to the Clerk of Court. The payments shall be clearly identified by the case name and number assigned to this case. If either plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officers in charge of the agencies where the plaintiffs are confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The plaintiffs are further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. The plaintiffs are reminded that it is their responsibility to promptly notify the court if they are released from custody or transferred to a different institution. The plaintiffs' failure to keep the court advised of their whereabouts may result in their dismissal from this case without further notice.

Dated at Milwaukee, Wisconsin this 8th day of March, 2022.

>s/Lynn Adelman_____
>LYNN ADELMAN
>United States District Judge

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.